UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANG W. MENDY, <br><br> Plaintiff, <br><br> v. <br><br> TRACY L. LARSON, et al., <br><br> Defendants. | CASE NO. 22-CV-01426-LK <br><br> ORDER DENYING MOTION TO APPOINT COUNSEL |

This matter comes before the Court on pro se Plaintiff Sang Mendy's Motion to Appoint Counsel. Dkt. No. 5.[1] For the reasons set forth below, the motion is denied without prejudice. If circumstances sufficient to justify appointment of counsel later arise, Mr. Mendy can re-file his motion articulating those grounds.

## I. BACKGROUND

In October 2019, Mr. Mendy and his partner moved into the Modera Jackson apartments, a complex owned, managed, and operated by Mill Creek Residential Services LLC. Dkt. No. 4 at

---

[1] Mr. Mendy is proceeding in forma pauperis ("IFP"). Dkt. No. 3.

ORDER DENYING MOTION TO APPOINT COUNSEL - 1

3–4. Mill Creek contracted with Northwest Security Services at the time. *Id.* at 4. Mr. Mendy alleges that a Northwest security guard, Tracy Larson, repeatedly harassed him and other black residents. *Id.* at 4–5; *see, e.g., id.* at 5 ("Whenever Mr. Larson saw Mr. Mendy alone or with a black friend, he would ask to see his ID, his key fob or ask what room number he was in."); *id.* (documenting another black resident's complaint against Larson for "racially charged" behavior). Mounting tensions boiled over in October 2020 when, following a heated exchange, Larson filed an allegedly false assault allegation against Mr. Mendy. *See id.* at 7. Mr. Mendy was arrested and booked into the King County Jail, but charges were dropped over a year later due to lack of evidence. *Id.* Mr. Mendy alleges that in response to Mr. Larson's pattern of behavior towards black residents, Mill Creek management eventually requested that Northwest cease stationing him at the Modera Jackson complex. *Id.* at 8.

In October 2022, Mr. Mendy sued Larson, Mill Creek, Northwest, and American Security Programs (Northwest's successor) for violations of the Fair Housing Act, 42 U.S.C. §§ 3604(b), 3617. *See* Dkt. No. 4 at 1–2 ("Plaintiff alleges that the Defendants 'created a hostile housing environment based on race.'"). He attributes these violations to "the pattern and practice of Mr. Larson's discriminatory treatment of Black residents and their guests"; "Northwest Security Services' negligent hiring, training, . . . supervision[,] and failure to take seriously allegations of their employees' racially charged language and discriminatory actions"; and Mill Creek's "too little too late" approach to Larson, which permitted him to continue "patrolling their premises even after evidence of his practices of racial discrimination were brought to their attention[.]" *Id.* at 8.

II. DISCUSSION

Mr. Mendy has been unable to retain counsel despite contacting "over 10 attorneys [and] multiple legal clinics over the past [two] years." Dkt. No. 5 at 2. No state or federal agency has assessed the merits of his complaint, but he hopes "that HUD or a local commission will consider

[his] case." *Id.* Mr. Mendy indicates that he "delayed reaching out until [the] false assault charges were dropped." *Id.*

"Unlike in criminal cases that implicate the Sixth Amendment right to counsel, civil litigants who cannot afford counsel are not constitutionally guaranteed the appointment of a lawyer." *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1039 (9th Cir. 2021). The Court does, however, have discretion to "request" appointment of counsel for indigent litigants pursuant to Section 1915(e)(1) in "exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).[2] The exceptional-circumstances inquiry requires the Court to consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1986). Neither consideration is dispositive, and the Court must view them together. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Mr. Mendy has not shown that either consideration weighs in his favor at this juncture. First, the Court cannot weigh the merits of his claims on the undeveloped, limited record before it. *See, e.g.*, *Sam v. Renton Sch. Dist.*, No. C21-1363-RSM, 2021 WL 4952187, at *1 (W.D. Wash. Oct. 25, 2021) ("The Court cannot conclude on this thin record whether these claims have a strong likelihood of success on the merits."). Second, this case does not appear to present the type of legally or factually complex issues that would preclude Mr. Mendy from adequately articulating his claims *pro se*. *Cf. Agyeman*, 390 F.3d at 1103–04 (*pro se* prisoner's meritorious case had "triple complexity" that required skillful framing and advanced legal knowledge of *Bivens* actions, the

---

[2] Although courts often refer to motions under section 1915(e)(1) as motions to appoint counsel, "the statute does not actually authorize the court to force a lawyer to take a case." *Sifuentes v. Nautilus, Inc.*, No. C21-5613-JLR, 2022 WL 1014963, at *1 (W.D. Wash. Apr. 5, 2022) ("Nor does the court have staff attorneys standing by to represent *pro se* litigants."). Under the statute, "the court may only 'request' that an attorney represent an indigent litigant." *Id.* (quoting 28 U.S.C. § 1915(e)(1)); *see also Mallard v. U.S. Dist. Court.*, 490 U.S. 296, 307 (1989) (section 1915(e) does not authorize compulsory appointments).

ORDER DENYING MOTION TO APPOINT COUNSEL - 3

Federal Tort Claims Act, and the Federal Bureau of Prisons' regulations). Indeed, Mr. Mendy's complaint "clearly demonstrates a capacity to proceed in this case *pro se*." *Sam*, 2021 WL 4952187, at *1; *Martushoff v. Washington*, No. C18-1870-RSM, 2019 WL 13240854, at *1 (W.D. Wash. Jan. 24, 2019) ("Plaintiff also appears able to adequately articulate his claims as they are not overly complex."). That Mr. Mendy might *more* articulately set forth the facts underlying his claim with the assistance of counsel is not the test. *Steiner v. Hammond*, No. C13-5120-RBL, 2013 WL 3777068, at *2 (W.D. Wash. July 16, 2013). Nor does his unsuccessful struggle to retain private counsel qualify as an exceptional circumstance. *Curbow v. Clintsman*, No. C21-1420-TLF, 2021 WL 5051662, at *1 (W.D. Wash. Nov. 1, 2021). Thus, at this stage of the litigation, the Court cannot find the exceptional circumstances necessary to justify appointment of counsel.

### III.   CONCLUSION

The Court accordingly DENIES Mr. Mendy's Motion to Appoint counsel without prejudice. Dkt. No. 5. This Order does not preclude Mr. Mendy from re-filing a motion to appoint counsel once a factual record pertaining to his claims has been more fully developed. The Clerk is directed to mail copies of this Order to Mr. Mendy at his last known address.

Dated this 9th day of January, 2023.

Lauren King
United States District Judge