UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANG W. MENDY,<br><br>       Plaintiff,<br>  v.<br><br>TRACY L. LARSON, et al.,<br><br>       Defendants. | CASE NO. 22-CV-01426-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ORDER EXTENDING TIME FOR SERVICE OF PROCESS AND FOR REISSUED SUMMONS |

This matter comes before the Court on Plaintiff Sang W. Mendy's Motion for Order Extending Time for Service of Process and Motion for Reissued Summons. Dkt. No. 57. For the reasons discussed below, the motion is granted in part and denied in part.

### I. BACKGROUND

The facts of this case are set forth in the Court's January 9, 2023 Order. Dkt. No. 23 at 1–2. The Court accordingly declines to recount them here except as relevant to Mendy's motion.

On October 7, 2022, Mendy—then proceeding pro se—filed a complaint against Defendants Tracy L. Larson, Mill Creek Residential Services LLC, Northwest Security Services,

Inc., and American Security Programs, Inc., alleging violations of Sections 3604(b) and 3617 of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. Dkt. No. 1-1.

On November 18, 2022, Mendy filed proofs of service reflecting that he personally delivered summons to an address in Olympia, Washington in an attempt to serve Mill Creek Residential Services, Northwest Security Services, and American Security Programs. *See* Dkt. Nos. 8–10. On January 9, 2023, Larson and Northwest Security Services filed their answer, asserting as an affirmative defense "all defenses stated in Fed. R. Civ. P. 12 insofar as they may be applicable, and thus, are not waived." Dkt. No. 25 at 5. On the same day, American Security Programs filed its answer, raising as an affirmative defense "[i]nsufficient service" and "[i]nsufficient service of process." Dkt. No. 27 at 6–7. On March 2, 2023, Mill Creek Residential Services filed its answer, raising as an affirmative defense "all defenses stated in Fed. R. Civ. P. 12 insofar as they may be applicable" and Mendy's "fail[ure] to properly effectuate service of process." Dkt. No. 35 at 4.

Mendy "attempted to figure out how to serve individual Defendant, Tracy Larson, but could not find an address where he could be personally served." Dkt. No. 58 at 2. On January 27, 2023, following Larson's appearance and answer in the case, Mendy filed a praecipe to issue summons as to Larson. Dkt. No. 31. The Clerk electronically issued this summons—addressed to "Attorneys for Defendants Tracy L. Larson"—on January 30, 2023. Dkt. No. 32.

On May 4, 2023, counsel appeared on behalf of Mendy. *See* Dkt. Nos. 42–43. On August 1, 2023, Mendy used a third-party process server to successfully serve Mill Creek Residential Services, Northwest Security Services, and American Security Programs, Dkt. Nos. 54–56. Larson filed a notice of acceptance of service on September 19, 2023. Dkt No. 51. On January 4, 2024, Mendy filed the instant motion to extend time for service of process and for reissued summons. Dkt. No. 57.

## II. DISCUSSION

**A.     Legal Standard**

The Federal Rules of Civil Procedure afford plaintiffs 90 days from the date the complaint is filed to effect service on a defendant. Fed. R. Civ. P. 4(m). Service must be made by an individual who is "not a party" to the litigation. Fed. R. Civ. P. 4(c)(2).

If a defendant is not served within that time frame, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, Rule 4(m) "provides two avenues for relief." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). The first is mandatory under the plain language of the rule: "the district court must extend time for service upon a showing of good cause." *Id.* "The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect." *Id.* ("Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action.").

**B.     Mendy Has Shown Excusable Neglect For His Failure To Timely Serve Defendants, But He Does Not Support the New Deadline He Requests**

Having filed his complaint on October 7, 2022, Mendy's deadline for serving Defendants was January 5, 2023. *See* Fed. R. Civ. P. 4(m). Nearly one year after this deadline, he seeks a new service deadline of March 19, 2024 at the earliest. Dkt. No. 57 at 1, 7 (seeking a deadline of "60 days from entry of th[is] Order" to effect service with a motion noting date of January 19, 2024).

Mendy contends that there is good cause to extend the time for service because "Defendants received actual notice of the lawsuit" and "would suffer no prejudice" if the time for service were extended, whereas he "would be severely prejudiced if his complaint were dismissed" because the Fair Housing Act's two-year statute of limitations would preclude him from re-filing

his complaint. *Id.* at 5. Mendy explains that he failed to timely serve Defendants in the earlier stages of this case because he was unrepresented by counsel and did not understand that service by a party is not permitted by the Federal Rules of Civil Procedure. Dkt. No. 57 at 2.

Defendants argue that Mendy's pro se status does not excuse his failure to serve them in accordance with the rules, especially considering that five months passed between his deadline to serve them and appointment of counsel. *See generally* Dkt. Nos. 61–64. Defendants also take issue with counsel's performance: despite being represented since early May 2023, Mendy did not serve them until August or September 2023, and inexplicably waited until January 2024 to file a motion seeking extension of the service deadline. *Id.*

To establish good cause, a plaintiff must demonstrate, "at minimum, excusable neglect." *Lemoge*, 587 F.3d at 1198 n.3. "Excusable neglect 'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence . . . and includes 'omissions caused by carelessness[.]'" *Id.* at 1192 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388, 394 (1993)). To determine when neglect is excusable, courts examine "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Id.* (quoting *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000)); *see also Iopa v. Saltchuk-Young Bros., Ltd.*, 916 F.3d 1298, 1301 (9th Cir. 2019). "In addition to excusable neglect, a plaintiff may be required to show the following factors to bring the excuse to the level of good cause: '(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" *Lemoge*, 587 F.3d at 1198 n.3 (quoting *Boudette v. Barnette,* 923 F.2d 754, 756 (9th Cir. 1991)).

1. Mendy's requested extension is unsupported

As an initial matter, Mendy's request for a March 2024 deadline to effect service is perplexing. No defendant contends that it has not been served at this point. Dkt. No. 61 at 2 ("[O]n August 1, 2023, Plaintiff re-served [Mill Creek Residential Services] using a third-party process server."); Dkt. No. 63 at 2 ("Plaintiff did not accomplish service on [American Security Programs] until August 1, 2023."); Dkt. No. 64 at 2 (stating that on August 1, 2023, "Plaintiff served defendant[] Northwest Security Services," and on September 19, 2023, "[a] Notice of Acceptance of Service for defendant Tracy Larson was filed"); *see also* Dkt. Nos. 51, 54–56. More importantly, Mendy makes no attempt to establish excusable neglect for the time period between September 19, 2023 and his proposed service deadline. Therefore, the Court declines to grant an extension post-dating this Order, and proceeds to consider whether Mendy has adequately supported an extension of the service deadline until September 19, 2023.

2. The length and reason for Mendy's delay and whether Mendy acted in good faith

Although Mendy's failure to serve Defendants for the first eight months of this litigation while he was unrepresented is lengthy, this delay was due to excusable neglect.

On November 18, 2022, roughly 40 days after Mendy filed his complaint, he filed proof of service for all three corporate defendants. Dkt. Nos. 8–11. Although these attempts at service were defective because Mendy served them personally, and although Larson was not served, all four Defendants appeared in the case by January 6, 2023. Dkt. Nos. 12 (American Security Programs and Northwest Security Services), 16 (Mill Creek Residential Services), 22 (Larson). The Defendants then proceeded to answer the complaint. Dkt. Nos. 25 (Larson and Northwest Security Services), 27 (American Security Programs), 35 (Mill Creek Residential Services). In the meantime, and with the apparent understanding that the corporate defendants had been served, Mendy made efforts to serve Larson. *See* Dkt. Nos. 31–32; Dkt. No. 58 at 2. In his February 19,

2023 motion for reconsideration of the Court's denial of his motion to appoint counsel, Mendy explained that "English is not [his] native language" and he was "struggling just to understand how to serve everyone properly." Dkt. No. 34 at 3. On March 13, 2023, the Court referred the motion to the Non-Prisoner Civil Rights Case Screening Committee for its "recommendation as to whether the Court should appoint counsel." Dkt. No. 38 at 2. This process required that Mendy's motion be re-noted for May 12, 2023. *Id.* at 3. And on March 23, 2023, the Court vacated the initial scheduling deadlines in the case pending its resolution of the motion. During the pendency of that motion until counsel was appointed in early May, Mendy attests that he continued to make "good faith efforts to serve the Defendants," although he "could not find an address where [Larson] could be personally served." Dkt. No. 58 at 2.

Considering the specific facts of this case, Mendy's inattention to the technical requirements of service was negligent or careless at worst. The record reflects diligent efforts to serve Defendants and a good faith belief that the corporate defendants had been served based on a genuine misunderstanding of Rule 4's requirements.

The Court cannot say the same for Mendy's counsel. Despite counsel being appointed on May 4, 2023, Mendy provides no explanation for his failure to properly serve Defendants until August and September 2023. Nor does Mendy indicate why he did not move to extend the service deadline until January 2, 2024, other than a passing reference to unspecified "attempts to meet and confer with Defendant[s] regarding whether they would waive affirmative defenses regarding service." Dkt. No. 65 at 2. For these reasons, these excusable neglect factors are neutral at best.

3. <u>Impact of the delay on the proceedings and on Defendants</u>

Although Mendy delayed in serving Defendants, they identify no prejudice that they would suffer if the time for service were extended. *See generally* Dkt. Nos. 61, 63, 64. And while Mendy's early attempts at service were defective, they did result in actual notice to Defendants of his

lawsuit. All four defendants have filed answers to the complaint, and no case schedule deadlines would need to be altered if the Court were to grant Mendy's motion. *See* Dkt. No. 53. Thus, an extended service deadline appears to pose no danger of prejudice to the Defendants and will not disrupt proceedings.

On the other hand, if the Court were to dismiss this case, Mendy would have only a brief window to re-file his Complaint within the Fair Housing Act's two-year statute of limitations.[1] And the practical effect of re-filing would be to give Mendy a renewed 90-day period to effect service.

Accordingly, these excusable neglect factors favor extending the service deadline.

### III. CONCLUSION

This motion presents a close call, and the Court cautions counsel for Mendy that his lack of diligence falls below that expected in this District. Nevertheless, on balance, the Court finds that Mendy has demonstrated excusable neglect for his delayed service. The Court therefore exercises its broad discretion to extend the service deadline.

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Mendy's motion, Dkt. No. 57, and retroactively extends the deadline to serve Defendants until September 19, 2023.

Dated this 31st day of January, 2024.

Lauren King
United States District Judge

---

[1] Mendy avers that if his complaint "is dismissed, even *without* prejudice, he will not be able to re-file and re-attempt service due to the statute of limitations." Dkt. No. 57 at 5. However, Defendants' discriminatory housing practice allegedly occurred on October 9, 2020, Dkt. No. 4 at 7, and Mendy filed his complaint with the Court on October 7, 2022, Dkt. No. 1, leaving two days remaining in the two-year statute of limitations to re-file in the event the case were dismissed. *See Escobedo v. Applebees*, 787 F.3d 1226, 1232–33 (9th Cir. 2015).