THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT FOR

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SANG W. MENDY, an individual, | Case No.: 2:22-cv-01426 |
| Plaintiff, | |
| v. | FIRST AMENDED COMPLAINT FOR DAMAGES |
| TRACY L. LARSON, an individual, | |
| MILL CREEK RESIDENTIAL SERVICES LLC, a corporation in the State of Delaware, | |
| NORTHWEST SECURITY SERVICES, Inc, a corporation in the State of Washington, | |
| AMERICAN SECURITY PROGRAMS, Inc, a corporation in the State of Virginia, | |

Plaintiff SANG W. MENDY alleges as follows:

**I.    Nature Of Action**

1.1    This is an action to recover damages under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, 42 U.S.C. § 3604(b) and 42 U.S.C. § 3617. Specifically, under Section 3604(b) Plaintiff alleges that the Defendants "created a hostile housing environment based on race."; interfered with Plaintiff's Fair Housing Rights based on Race pursuant to 24 CFR Section 100.400; and Negligently failed to train or supervise employees in retaining video footage that

FIRST AMENDED COMPLAINT FOR DAMAGES - 1

would have proven that Plaintiff, Mr. Mendy, was discriminated against by Defendant, Tracy Larsen.

## II.    Jurisdiction and Venue

2.1    This Court has subject matter jurisdiction under 28 U.S.C § 1331, 28 U.S.C. § 1343(a)(4), and 42 U.S.C § 3613(a)(1)(A) over plaintiff's claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

2.2    The Court has personal jurisdiction over defendants. Defendant Tracy Larson, who resides in Shoreline, Washington, within the Western District of Washington, was working for Northwest Security Services, Inc., "Northwest Security Services", a Washington For-Profit Corporation, Washington State registration number 601 010 288; this corporation was subject to personal jurisdiction at the time the discrimination commenced as outlined in 28 U.S.C. § 1391 (b); and this corporation, complete with all of its assets, debts and liabilities merged into American Security Programs, Inc, "American Security Programs", effective October 27, 2021; thus American Security Programs purposefully availed themselves of Washington State by purchasing a Washington corporation and continuing to conduct business in Washington. Mill Creek Residential Services LLC too purposefully availed themselves of Washington State by creating 1608 housing units in seven major housing developments in Seattle alone, in addition to another five major housing developments in Redmond, Everett and Lacey.

2.3    Venue is proper in the Western District of Washington because the unlawful practices alleged herein took place in this District, and the defendants reside or operate in this district. *See* 28 U.S.C. § 1391(b).

FIRST AMENDED COMPLAINT FOR DAMAGES - 2

### III.     The Parties to This Complaint

3.1     Plaintiff Sang W. Mendy is an adult man with a clean record, residing in Seattle, Washington. Mr. Mendy is Black and an immigrant from The Gambia, West Africa for the purposes of 42 U.S.C. § 3601 *et seq*. Mr. Mendy has not brought any other lawsuits in any federal court in the United States.

3.2     Defendant Mill Creek Residential Services LLC or "Mill Creek Residential" is a Delaware Limited Liability Corporation, with 12 major housing developments in Western Washington. They formerly owned, managed and operated the apartment complex at 1801 South Jackson St, Seattle, Washington 98144, at which plaintiff resided with his family. While they owned this property, including throughout the duration of the events that took place in this complaint, the property was known as "Modera Jackson", and this complaint will refer to it as such.

3.3     Defendant Tracy Larson is an adult man who at all times relevant, was a security guard for Northwest Security Services, Inc., and worked regularly as a security patrol officer at the Modera Jackson complex where plaintiff resided with his family. Northwest Security Services was contracted by Modera / Mill Creek Residential to provide security at its premises. Records show that Northwest Security Services and Mill Creek Residential were aware of multiple incidents where Defendant Mr. Larson racially profiled and harassed Black residents at the Modera Jackson. Following a merger dated October 27, 2021, Defendant American Security Programs is the legal owner of all assets, debts and liabilities that accrued to Northwest Security Services.

3.4     Northwest Security Services was a corporation organized under the laws of the State of Washington throughout the entire period that the harassment and discrimination took place.

FIRST AMENDED COMPLAINT FOR DAMAGES - 3

Defendant American Security Programs is a corporation in the State of Virginia which has contracts throughout Western Washington. The Registered Agent for American Security Programs, Inc. is CT Corporation System located at 1801 West Bay Drive NW, Suite 206, Olympia, WA 98502. CT Corporation System is also the registered agent for Mill Creek Residential Services LLC.

### IV.  Statement of Claim

4.1  Plaintiff Sang Mendy moved into the Modera Jackson apartments, in part because he was seeking safety and security for his family and himself.

4.2  Mr. Mendy and his partner Marnie Nordling applied to lease an apartment at the Modera Jackson located at 1801 South Jackson St, Seattle, Washington 98144 before the building was even open. They moved into their three-bedroom apartment with their two children October 1, 2019, the very month that the building first opened.

4.3  Modera Jackson / Mill Creek Residential Trust LLC contracted with Northwest Security Services to provide security for the first two years that the Modera Jackson was operating as a provider of rental housing units.

4.4  Within Mr. Mendy's first year of living at the Modera Jackson, Mr. Larson, working for Northwest Security Services and thus contracted by Mill Creek Residential began harassing Mr. Mendy. The first time Mr. Mendy was racially profiled and harassed by Mr. Larson, Mr. Mendy was sitting in a shared public lobby on the first floor. Mr. Larson asked to see his key fob and before Mr. Mendy could reply he shouted at him, "You need to leave!"

FIRST AMENDED COMPLAINT FOR DAMAGES - 4

4.5	Whenever Mr. Larson saw Mr. Mendy alone or with a black friend, he would ask to see his ID, his key fob or ask what room number he was in. Whenever Mr. Larson saw Mr. Mendy with his partner, who's white, he would refrain from harassing him.

4.6	According to Natalie Benoit, a manager at Modera, the security guards should not be asking anyone for proof that they live there unless there is some other issue or cause for concern. Residents and guests alike should be free to move about without being asked for ID or proof of residency.

4.7	Mr. Larson asked Mr. Mendy if he was a resident on three separate occasions. Mr. Mendy began avoiding Mr. Larson whenever he was patrolling. Mr. Mendy thought that after a while Mr. Larson would recognize him and start leaving him alone.

4.8	In August 2019, another black resident at the Modera Jackson reported concerns with Defendant Mr. Larson. Mr. Larson escalated a simple noise complaint, called the police and reportedly made false accusations against her group, which he saw it relevant to point out included "black people". Modera resident Shaquelle Duncan wrote in an email to Modera: "I am writing because I am under the belief that the security guard's actions were racially charged, as he told dispatch that there were black people in our group and also told them that someone in the group obstructed him from calling the police when no one did no such thing."

4.9	Natalie Benoit, a Manager at Modera, reached out to Defendant Northwest Security Services to follow up on this incident, writing in an email: "The resident has come to us and alleged that the security guard made racial remarks against her and her party. I would like to gain a more detailed statement from you and your agents' end of exactly what took place, as we take these

FIRST AMENDED COMPLAINT FOR DAMAGES - 5

complaints very seriously. If you could let me know of a more detailed exchange between your agent and my resident as soon as possible, I would greatly appreciate it."

4.10    Northwest Security Services Business Development Manager Al Barto, forwards a response from Northwest Security Services Patrol Operations Manager David Johann to Natalie Benoit, Manager at Modera. He ignores the allegations that his security patrol officer Defendant Mr. Larson had "made racial remarks" and responds, "it appears to be a disgruntled tenant at first glance".

4.11    There is no evidence that Defendant Northwest Security Services took the accusation of "racial remarks" seriously, let alone reprimanded their employee or sent him for retraining. Northwest Security Services' negligent hiring, training, and supervision created a pattern and practice of Black residents being denied the same privileges as other residents and being made unsafe in their homes.

4.12    Mill Creek Residential for their part did not take sufficient action to protect their residents. Despite Manager Natalie Benoit's strongly worded email that they take allegations of "racial remarks" very seriously, and despite meeting with the resident who was targeted, it seems that Mill Creek Residential did nothing to follow up on Mr. Larson's record, character or risk to the community after hearing back from Northwest Security Services' Patrol Operations Manager that "After checking with the officer, unfortunately all he confirmed was that she was very rude from the start of the contact, and got ruder when they did not initially comply with the noise complaint and he let them know he was serious about needing to contact 911 if they did not quiet down." This email ended their exchange on Defendant Tracy Larson's racial remarks towards Shaquelle Duncan.

FIRST AMENDED COMPLAINT FOR DAMAGES - 6

4.12    On October 9, 2020, Defendant Mr. Tracy Larson made a false allegation of assault against Plaintiff Mr. Mendy. There are inconsistencies between Mr. Larson's 911 call, initial interviews by cops, and subsequent interviews. The Seattle Police Department were racially biased in their response, taking Mr. Larson's word, even when inconsistent, coaching more consistent responses, and not believing that Mr. Mendy lives there even though they have his key fob and he's recorded on video instructing the police to look at his key fob or check for his name on the call box.

4.13    The incident on October 9, 2020, began with Mr. Larson doing his rounds and finding Mr. Mendy in the 5th floor lobby. Consistent with his ongoing pattern of racially profiling Black people when they are not in the company of white people, he asks Mr. Mendy, "Do you live here? What's your room number?" Mr. Mendy stands up, annoyed and angry, and says, "Remember this face," pointing at his face. "You always ask me if I live here. F**king remember this face." Mr. Larson then backs away and says, "Don't hit me." Mr. Mendy is confused, "Why would I hit you?" Mr. Larson then proceeded to leave and called the police saying that a Black man who was trespassing had hit him.

4.14 On or after October 10, 2020, Mill Creek Residential Staff, Felicity Alexander and Natalie Benoit, had knowledge that Mr. Mendy had been arrested.

4.15 Mr. Mendy was booked in the King County Jail that night and the following night during the height of Covid on account of Mr. Larson's false allegation. The Seattle City Attorney's office proceeded to press charges, tried to pressure a plea deal, eventually dropping all charges

FIRST AMENDED COMPLAINT FOR DAMAGES - 7

after 13 months on November 24, 2021 on account of "lack of evidence". Mr. Mendy was not able to work while there were false charges pending against him.

4.16    Managers at Modera identified a pattern in Mr. Larson's actions towards resident Shaquelle Duncan and resident Sang Mendy. Following Mr. Mendy's release from jail, manager Natalie Benoit, on October 10, 2020, emailed manager Felicity Alexander forwarding the email from Shaquelle Duncan. "I dug this up. I recalled an incident similar to this awhile ago back when I worked at Jackson. As it turns out, it was actually the same security guard as the incident that took place with 216 the other day, and a very similar accusation!"

4.17    Felicity Alexander writes, "we have asked that that officer no longer be dispatched to our community until we can hire a different company. We feel awful for our resident and hope this issue is resolved swiftly for him." But they had information to take action sooner, and had they done so, Mr. Mendy's terrifying and ongoing ordeal would have been avoided. Northwest Security Services and Mill Creek Residential for their part failed to take any action to prevent or otherwise discourage their officer and/or Agent from racially profiling or harassing Black residents at the apartment complexes where they were contracted to provide security for all residents equally and without discrimination.

4.18    The pattern and practice of Mr. Larson's discriminatory treatment of Black residents and their guests, Northwest Security Services' and Mill Creek Residential's negligent hiring, training, and supervision and failure to take seriously allegations of their employees' and agents racially charged language and discriminatory actions, and Mill Creek Residential doing too little too late allowing Mr. Larson to continue patrolling their premises even after evidence of his practices of racial discrimination were brought to their attention resulted in violations of the

FIRST AMENDED COMPLAINT FOR DAMAGES - 8

Federal Fair Housing Act including generally 24 CFR Section 100.400, because Black residents did not enjoy the same privileges as other residents and in fact were harmed by having the police called on them, made unsafe in their own home by the security that was supposed to protect them. In Mr. Mendy's case he also had his livelihood stripped away from him simply for demanding dignity and respect at the place where he pays rent to live.

      4.19    Defendants Mr. Tracy Larson, Northwest Security Services, and Mill Creek Residential are all responsible for violations of the Federal Fair Housing Act through the acts of their employees and or through the acts of their agents through the legal doctrine of Respondeat Superior. Upon information and belief, Defendant American Security is liable for violations of the Fair Housing Act resulting from acts of NWSS and SecurAmerica employees that followed November 24, 2020.

4.20 On November 20, 2020, Defendant Mill Creek employees, Felicity Alexander and Natalie Benoit, were directly contacted by the King County Department of Public Defense Gerald Gregory regarding the criminal case that was then being prosecuted against Mr. Mendy.

      4.21 On or about November of 2020, Northwest Security became a subsidiary of SecurAmerica. See Dkt 67, pg. 3. Upon information and belief, Northwest Security continued to operate as a subsidiary of SecurAmerica and took no steps to investigate the incident between Mr. Larson and Mr. Mendy, nor did they view surveillance footage related to the incident between Mr. Mendy and Larson.

      4.22 On October 27, 2021, NWSS and a number of other entities merged with and into American Security Programs. Id. Upon information and belief, American Security Programs, Inc inherited the service contract obligation between Mill Creek and NWSS.

FIRST AMENDED COMPLAINT FOR DAMAGES - 9

4.22 Upon information and belief, Defendant American Security became joint and severally liable for acts arising from the activities of NWSS and SecurAmerica.

4.23 Upon information and belief, Defendants, Mill Creek, NWSS, and American Security had the capabilities of reviewing, extracting, preserving, or recovering video surveillance footage of the October 9, 2020 "incident" between Plaintiff and Defendant Tracy Larson. Indeed, upon information and belief Tracy Larson was an employee of NWSS through at least February of 2021, and an agent of Mill Creek during that time. The video surveillance would have shown the allegations by Mr. Larson against Mr. Mendy were false.

## V.    Injuries

5.1    As a result of the false charges brought against Plaintiff Mr. Mendy on the basis of Defendant Mr. Larson's false testimony, the Plaintiff lost both of his jobs and was unable to work for the 13-month period that the Seattle City Attorney's Office pressed charges without any evidence. Ultimately, after the Plaintiff refused numerous plea deals, all charges were dropped without any conditions due to "lack of evidence". But dropping the charges did not undo the financial hardship or the pain and suffering that they caused.

5.2    As a result of this experience, from Phase 1, being racially profiled and harassed in his own home over the course of a year; to Phase 2, being detained in the lobby of his home and arrested on false charges; to Phase 3, Defendant's not turning over video surveillance of the incident to law enforcement authorities to prove his innocence; to Phase 4, having false charges against him for 13 months during which time he was unable to work, Plaintiff Mr. Mendy, his partner and kids suffered financial hardship, insecurity and increased stress, difficulty sleeping, fearing for their safety in their own home. They accrued high credit card debt just to pay rent,

FIRST AMENDED COMPLAINT FOR DAMAGES - 10

which they are still struggling to pay off. Mr. Mendy further suffered from distress, humiliation, and loss of enjoyment of life. Why was the Prosecutor pressing charges and coming at him with a barrage of plea deals? All of this brought up uncertainty around his immigration status. In Mr. Mendy's culture, it is understood that going to jail gives someone a lot of negative energy that can only be cleansed with certain cleansing rituals. Even after going home to conduct these rituals, he has been left with a high level of anxiety.

## VI.     prayer for Relief

WHEREFORE, Plaintiff prays for the following:

6.1    For trial by jury on all claims;

6.2    For a declaration that the defendants' conduct violated federal law;

6.3    For an injunction to stop the defendants' illegal conduct and prevent it from occurring again in the future;

6.4    For special and general compensatory damages on all claims in an amount to be proven at the time of trial;

6.5    For punitive damages under 42 U.S.C. § 3613 (c) (1), and as otherwise allowed by law;

6.6.   For the right to amend this complaint to conform to proof offered at trial; and

6.7 For such other and further relief as the Court deems just and proper.

/

FIRST AMENDED COMPLAINT FOR DAMAGES - 11

1  /

2

3  /

4

5

6  Dated: June 11, 2024

7  Respectfully Submitted,

8

9

10

11  s/Nolan Lim, WSBA #36830

12  Nolan Lim Law Firm, PS

13  1111 Third Ave. Suite 1850

14  Seattle, WA 98101

FIRST AMENDED COMPLAINT FOR DAMAGES - 12