UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SANG W. MENDY,<br><br>                    Plaintiff,<br><br>   v.<br><br>TRACY L. LARSON et al.,<br><br>                  Defendants. | CASE NO. 2:22-cv-01426-LK<br><br>ORDER ON SUPPLEMENTAL MOTION FOR PROTECTIVE MOTION, MOTION TO SEAL, AND MOTION TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION |

      This matter comes before the Court on three separate but related motions: Defendant American Security Programs, Inc.'s Supplemental Motion for Protective Order, Dkt. No. 98, and Motion to Seal, Dkt. No. 102, as well as Plaintiff Sang Mendy's Motion to Compel Responses to Request for Production, Dkt. No. 111. For the following reasons, the Court grants in part and denies in part each of the three motions.

I.   BACKGROUND

      The facts of this case are set forth in the Court's June 10, 2024 Order. Dkt. No. 121 at 1–4. The Court accordingly declines to recount them here except as relevant to the motions at issue.

On March 7, 2024, American Security Programs, Inc. ("ASP") filed a motion for summary judgment, contending that it was not liable for Mendy's Fair Housing Act claims because the owners of Northwest Security Services, Inc. ("Northwest") at the time of the October 2020 incident (the Bargers) assumed all pre-November 24, 2020 liabilities by way of a stock purchase agreement ("Agreement") with SecurAmerica, LLC. Dkt. No. 67 at 1–2. ASP filed a declaration in support of its motion that included an excerpted version of the Agreement. Dkt. No. 69 at 4–8.

On April 20, 2024, the Court ordered ASP "to produce a complete and unabridged copy" of the Agreement. Dkt. No. 91. On April 26, 2024, ASP filed a copy of the Agreement under seal, Dkt. No. 94, as well as an unsealed copy that redacted the Agreement's purchase price and associated financial information (e.g., net working capital target, share par value, and subordinated promissory note details), Dkt. No. 93. On the same day, ASP moved for a protective order concerning the production of the redacted material, contending that "[t]he amount SecurAmerica paid to purchase [Northwest] is not relevant in any way to the claims in [Mendy's] suit." Dkt. No. 95 at 3. The Court denied ASP's motion on May 8, 2024. Dkt. No. 99.

On May 3, 2024, ASP filed another sealed and redacted copy of the Agreement that included the Agreement schedules, which ASP asserts "were previously unknown . . . but have since been located." Dkt. No. 96 at 1; Dkt. No. 97 at 1; *see generally* Dkt. No. 96 (unsealed and redacted Agreement with schedules); Dkt. No. 97 (sealed Agreement with schedules). In the unsealed copy of the complete Agreement, ASP redacted certain financial information contained within the Agreement schedules (i.e., working capital, financial information from 2018 to 2020, and accounts receivable), as well as litigation and claims summaries. *See* Dkt. No. 96 at 7–8, 12, 35, 38, 65, 98–103, 105–08, 110, 118, 121–22.

On May 7, 2024, ASP filed a supplemental motion for protective order concerning the redacted material in the Agreement schedules. Dkt. No. 98. On May 13, 2024, ASP filed a motion

1  to seal all of the material it had redacted in docket entry 97. Dkt. No. 102. Mendy opposes both of
2  ASP's motions. Dkt. No. 105.

3  On May 22, 2024, Mendy filed a motion to compel responses to his request for production
4  of ASP's "balance sheets and income statements for the years 2021, 2021, . . . 2023, and 2024" for
5  the purpose of "assessing punitive damages[.]" Dkt. No. 112-1 at 4; *see also* Dkt. No. 111. ASP
6  objected to this request on March 14, 2024, maintaining that "[p]unitive damages by definition are
7  not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful
8  action was intentional or malicious, and to deter him and other from similar extreme conduct," and
9  therefore "punitive damages are not available against ASP" because "[t]here is no evidence or
10 even allegation that ASP was a tortfeasor who committed wrongful actions." Dkt. No. 112-1 at 4–
11 5.

12 On June 10, 2024, the Court denied ASP's motion for summary judgment and granted
13 Mendy's motions to continue ASP's motion for summary judgment. Dkt. No. 121 at 15. The Court
14 determined that ASP did not support its position that the Bargers assumed liability for Mendy's
15 Fair Housing Act claims under the plain language of the Agreement. *Id.* at 9–11.

## II.   DISCUSSION

**A.   ASP's Motion to Seal is Granted in Part and Denied in Part**

18 ASP moves to seal the purchase price, certain financial information contained within the
19 Agreement (i.e., working capital, financial information from 2018 to 2020, and accounts
20 receivable), and litigation and claims summaries in Schedule 3.23. Dkt. No. 102 at 2, 4; *see also*
21 Dkt. No. 93 at 7–8, 12, 35, 38 (redacted material); Dkt. No. 96 at 7–8, 12, 35, 38, 65, 98–103, 105–
22 08, 110, 118, 121–22 (same). Mendy did not file an opposition to this request.

23 Courts have recognized a "general right to inspect and copy public records and documents,
24 including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,

1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Accordingly, when a district court considers a sealing request, "a strong presumption in favor of access is the starting point." *Id.* (cleaned up). This presumption, however, "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999)).

The standard for determining whether to seal a record depends on the filing with which the sealed record is associated and whether such filing is "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1102 (9th Cir. 2016). If the filing at issue is more than tangentially related to the merits of the case, the court must apply the "compelling reasons" standard to the motion to seal. *See id.* If the filing is only tangentially related to the merits, the party seeking to seal the records need only show "good cause." *See id.*

Additionally, in the Western District of Washington, parties moving to seal documents must comply with the procedures established by Local Civil Rule 5(g). Under that rule, the party who designates a document confidential must provide a "specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interest that warrant the relief sought; (ii) the injury that will result if the relief sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not sufficient." LCR 5(g)(3)(B).

Because the filing at issue here is only tangentially related to the merits of Mendy's Fair Housing Act claims, the Court evaluates ASP's motion under the "good cause" standard. The Court concludes that while ASP has demonstrated good cause to seal the purchase price and financial information in the Agreement, it has not demonstrated good cause to seal the litigation information in Schedule 3.23.

ORDER ON SUPPLEMENTAL MOTION FOR PROTECTIVE MOTION, MOTION TO SEAL, AND MOTION TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION - 4

1.  ASP Has Demonstrated Good Cause to Seal the Purchase Price and Financial Information

For the reasons stated in ASP's motion, and because Mendy does not oppose the motion, the Court finds good cause to grant ASP's motion with respect to the purchase price and financial information that it has redacted in the Agreement. This information may remain under seal.

2.  ASP Has Not Demonstrated Good Cause to Seal the Litigation Information

ASP also seeks to seal the litigation and claims information in Schedule 3.23 of the Agreement because such information "is protected work-product[.]" Dkt. No. 102 at 5 (referencing Dkt. No. 98 at 4–5). ASP contends that the "summar[ies] of litigation and potential claims and evaluation of such claims" in Schedule 3.23 "were prepared in order to advise the purchasing company [of] potential litigation," and therefore are "protected from disclosure" under the work product doctrine. Dkt. No. 98 at 4–5.

Because this Court exercises federal question jurisdiction over Mendy's federal Fair Housing Act claims pursuant to 28 U.S.C. § 1331, the federal common law of privilege applies. Fed. R. Evid. 501; *see also Williams & Cochrane, LLP v. Rosette*, No. 23-55166, 2024 WL 1651666, at *2 (9th Cir. Apr. 17, 2024). The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). To qualify for protection against discovery under Rule 26(b)(3)(A), documents must satisfy two criteria: "(1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Envt'l Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (quotation marks and citation omitted); *see also United States v. Microsoft Corp.*, No. C15-102-RSM, 2020 WL 263577, at *3 (W.D. Wash. Jan. 17, 2020).

"To determine whether a document was prepared in anticipation of litigation," courts "require evidence of '[t]he circumstances surrounding the document's preparation,' including 'the nature of the document *and* the factual situation of the particular case." *In re Grand Jury Investigation*, 747 F. App'x 544, 545 (9th Cir. 2018) (quoting *In re Grand Jury Subpoena*, 357 F.3d at 908).

When a document was not prepared exclusively for litigation, it can only qualify for work product protection "if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 485 (9th Cir. 2018) (cleaned up). Unless they meet this standard, documents created in the ordinary course of business are not protected by the work product doctrine "because they would have been created regardless of the litigation." *Sixty-01 Ass'n of Apt. Owners v. Pub. Serv. Ins. Co.*, No. C22-1373-JCC, 2023 WL 7921091, at *4 (W.D. Wash. Nov. 16, 2023) (emphasis omitted). "More than the mere possibility of litigation must be evident for materials" to qualify under the work product doctrine. *Slack v. Swift Transp. Co. of Ariz., LLC*, No. C11-5843-BHS, 2016 WL 11815753, at *2 (W.D. Wash. Nov. 3, 2016) (quotation marks and citation omitted).

Here, ASP has failed to show that the litigation summaries in Schedule 3.23 of the Agreement were drafted in anticipation of litigation. This disclosure schedule, like several other schedules in the Agreement, was prepared as a representation and warranty of the Bargers in the Agreement regarding outstanding litigation and claims against Northwest. *See* Dkt. No. 96 at 11, 17. ASP has not demonstrated that any of the claims listed in the disclosure schedule are likely to be litigated; in fact, none of the listed claims indicate any pending or likely litigation that may arise. Dkt. No. 97 at 121–22. Schedule 3.23 was prepared to facilitate the sale of Northwest's stock by the Bargers to SecurAmerica—i.e., an ordinary and non-litigation-related business transaction—as opposed to being prepared to summarize pending and actual litigation against

ORDER ON SUPPLEMENTAL MOTION FOR PROTECTIVE MOTION, MOTION TO SEAL, AND MOTION TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION - 6

1    Northwest. *See Logan v. Comm. Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996) ("[I]t is important
2    to distinguish between an investigative report developed in the ordinary course of business as a
3    precaution for the remote prospect of litigation and materials prepared because some articulable
4    claim, likely to lead to litigation has arisen." (cleaned up)); *Panter v. Marshall Field & Co.*, 80
5    F.R.D. 718, 725 n.6 (N.D. Ill. 1978) ("[W]e do not recognize a Per se rule, as defendants apparently
6    wish, that an attorney's work product in preparing a tender offer or other form of business
7    combination is automatically entitled to work product protection"; instead, "the prospect of
8    litigation must be identifiable because of Specific claims that have already arisen." (cleaned up)).
9    Nothing in ASP's briefing convincingly establishes that a document created to be shared with
10   SecurAmerica, and subsequently shared with SecurAmerica, is entitled to work product
11   protections or that those protections were not waived, *see United States v. Huawei Device Co.*, No.
12   CR19-10RSM, 2019 WL 2214673, at *2 n.4 (W.D. Wash. May 22, 2019), especially considering
13   the fact that ASP did not include this schedule on its privilege log, Dkt. No. 105 at 3. Thus, the
14   schedule does not qualify for work product protection. *See, e.g.*, *Moser as Tr. of Tr. Under*
15   *Amended Joint Plan of Liquidation of Tango Transp., LLC v. Navistar Int'l Corp.*, No. 4:17-cv-
16   00598, 2019 WL 236722, at *3 (E.D. Tex. Jan. 16, 2019) ("[A]lthough the documents may contain
17   summaries of litigation prepared by attorneys for Navistar, the primary purpose behind the creation
18   of the documents was not to aid in possible future litigation, but to aid KPMG in conducting the
19   audit."); *Syron v. Fed. Housing Fin. Agency*, No. 1:14-mcv-359 (JEB/JMF), 2014 WL 12623047,
20   at *6 (D.D.C. Dec. 31, 2014) (finding that summaries of litigation developments "fail[ed] to satisfy
21   the work product doctrine because they lack[ed] a clear indication that they were prepared for or
22   in anticipation of litigation").

23         Because ASP has failed to provide a basis to seal this information, the Court denies ASP's
24   motion with respect to the litigation and claims summaries in Schedule 3.23 of the Agreement.

ORDER ON SUPPLEMENTAL MOTION FOR PROTECTIVE MOTION, MOTION TO SEAL, AND MOTION
TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION - 7

**B.    ASP's Supplemental Motion for a Protective Order is Granted in Part and Denied in Part**

ASP also moves for a protective order concerning the redacted information in the Agreement's disclosure schedules. Dkt. No. 98. Pursuant to Federal Rule of Civil Procedure 26(c)(1), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). ASP asserts that the financial information redacted in the Agreement schedules is "not relevant because no punitive damages can be entered against [Northwest]." Dkt. No. 98 at 3–4. Mendy opposes ASP's motion, contending that the financial information of Northwest is relevant because punitive damages can be assessed against Northwest and ASP in the event that Mendy's action against Northwest and ASP is successful. Dkt. No. 105 at 4–7.

In a civil action to enforce the Fair Housing Act, "if the court finds that a discriminatory housing practice has occurred . . . the court may award to the plaintiff actual and punitive damages[.]" 42 U.S.C. § 3613(c)(1); *see also The Fair Hous. Council of San Diego v. Penasquitos Casblanca Owner's Ass'n*, 381 F. App'x 674, 676–77 (9th Cir. 2010). And "[a] defendant's net worth and financial condition are relevant to the issue of punitive damages." *Tapia v. NaphCare Inc.*, No. C22-1141-KKE, 2024 WL 184256, at *6 (W.D. Wash. Jan. 17, 2024); *see also TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (noting it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages"). "However, the inquiry as to how much detail is required is fact-specific, and courts have reached conflicting outcomes on the extent to which this type of discovery is appropriate is appropriate in a given case." *Tapia*, 2024 WL 184256, at *6 (collecting cases).

Here, the grounds for ASP's motion for a supplemental protective order are the same as those it relies upon for its motion for summary judgment; i.e., that it did not assume the liabilities of Northwest pursuant to the Retained Liabilities provision of the Agreement. *Compare* Dkt. No. 98 at 3–4, *with* Dkt. No. 67 at 5–7. As the Court found in its order denying ASP's summary judgment, the language in that provision did not clearly allocate Northwest's pre-November 24, 2020 liabilities to the Bargers. *See* Dkt. No. 121 at 9–10. And because ASP assumed all of Northwest's liabilities pursuant to the October 2021 articles of merger, it still may be liable for Mendy's Fair Housing Act claims. It therefore also may be subject to punitive damages should Mendy be successful in this action.

However, Mendy does not explain how Northwest's financial information in the schedules is relevant to his claim for punitive damages. Mendy concedes that Northwest is no longer a separate entity, and that if his action is successful, the liabilities would be incurred by ASP as opposed to Northwest. Dkt. No. 105 at 5–6. Thus, for the purposes of punitive damages, ASP's current net worth and financial condition are what matter (which Mendy effectively acknowledges in his motion to compel, *see generally* Dkt. No. 111); Northwest's financial information from 2018 to 2020, by contrast, is largely irrelevant. The Court therefore grants ASP's motion for a protective order with respect to the financial information at issue in the Agreement. However, because the Court denied ASP's motion to seal with respect to the claims summaries in Schedule 3.23, its motion for a protective order with respect to that information is denied as moot.

**C.     Mendy's Motion to Compel Responses to Request for Production is Granted in Part**

Last, Mendy moves to compel ASP's balance sheets and income statements from 2020, 2021, 2023, and 2024. Dkt. No. 111; *see* Dkt. No. 112-1 at 4.[1] As with the redacted financial

---

[1] Mendy's request for production did not include a request for ASP's balance sheets and income statements from 2022. Dkt. No. 112-1 at 4.

ORDER ON SUPPLEMENTAL MOTION FOR PROTECTIVE MOTION, MOTION TO SEAL, AND MOTION TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION - 9

information in the Agreement schedules, Mendy seeks ASP's recent balance sheets and income statements for the purposes of assessing punitive damages. Dkt. No. 111 at 2–5; Dkt. No. 112-1 at 4. ASP objects to Mendy's request for production, asserting that "[t]here is no evidence or even allegation [in Mendy's complaint] that ASP was a tortfeasor who committed wrongful actions" under the Fair Housing Act, and therefore "punitive damages are not available against ASP and its financial information is wholly irrelevant as it had no involvement in the actions giving rise to [Mendy's] suit." Dkt. No. 112-1 at 4–5.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). This Court has broad discretion to decide whether to compel disclosure. *Id.*; *see also Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

ASP insists that even if it were Northwest's successor and Northwest were liable to Mendy for punitive damages, "ASP would merely be liable for the judgment as the successor" and "[p]unitive damages would not be awarded directly against ASP because it was not the tortfeasor." Dkt. No. 118 at 5–6. As discussed above, "[a] defendant's net worth and financial condition are relevant to the issue of punitive damages." *Tapia*, 2024 WL 184256, at *6. ASP has not demonstrated that it did not assume Northwest's liabilities for Mendy's Fair Housing Act claims, *see* Dkt. No. 121 at 11–12, and under the October 2021 articles of merger, "all debts, liabilities and duties of the Non-Surviving Entities," including Northwest, "shall . . . continue to be, as the case may be, the debts, liabilities and duties of [ASP] by operation of law[.]" Dkt. No. 68 at 5. Courts have specifically found that successors like ASP can be held liable for their predecessor's

Fair Housing Act liabilities. *See, e.g.*, *Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, 205 F. Supp. 3d 1105, 1114–16 (C.D. Cal. 2016); *Equal Rights Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *14–15 (D. Md. Mar. 31, 2016); *Kennedy v. City of Zanesville, OH*, 505 F. Supp. 2d 456, 480 (S.D. Ohio 2007). Such liabilities can include liability for any applicable punitive damages. *See, e.g.*, *Equal Rights Ctr.*, 2016 1258418, at *13 n.21 (observing that successor defendant could be liable for punitive damages under Fair Housing Act). Given Mendy's punitive damages claim, such information would be "generally admissible at trial[.]" *Coachman v. Seattle Auto Mgmt.*, No. C17-187-RSM, 2018 WL 1640893, at *3 (W.D. Wash. Apr. 5, 2018); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) (noting that "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"). This is not to say that punitive damages will ultimately be appropriate in this case, even if Mendy prevails on his Fair Housing Act claim; the Court holds only that ASP's financial information is discoverable at this stage of the litigation, when not all potentially pertinent facts regarding the merger are available to the Court. *See Sheppard v. A.C. & S. Co.*, 484 A.2d 521, 525–26 (Del. Super. Ct. 1984) (discussing differing views regarding assessing punitive damages against successor corporations and concluding that "each case of successor liability must turn on its particular facts").

For these reasons, the Court grants Mendy's motion to compel, but only as to ASP's "current financial information." *Coachman*, 2018 WL 1640893, at *4. Courts in this District have generally limited such discovery to balance sheets and income statements to the last three years of available data. *See, e.g.*, *id.*; *Dawson v. S. Corr. Entity*, No. C19-1987-RSM, 2021 WL 843141, at *3 (W.D. Wash. Mar. 5, 2021); *Fish, LLC v. Harbor Marine Maint. & Supply, Inc.*, No. C17-0245-JCC, 2018 WL 1121332, at *3 (W.D. Wash. Mar. 1, 2018). Here, ASP's relevant financial information is from after its October 2021 merger with Northwest and other entities; therefore, the

Court grants Mendy's motion to compel to ASP's balance sheets and income statements from 2021, 2023, and 2024.[2]

### III.  CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. ASP's motion for supplemental protective order, Dkt. No. 98, is GRANTED IN PART and DENIED IN PART.

2. ASP's motion to seal, Dkt. No. 102, is GRANTED IN PART and DENIED IN PART. The following may remain under seal: Dkt. No. 94 at 7–8, 12, 35, 38; Dkt. No. 97 at 7–8, 12, 35, 38, 65, 98–103, 105–08, 110, 118. ASP must file an unsealed copy of pages 121–22 of docket entry 97.

3. Mendy's motion to compel, Dkt. No. 111, is GRANTED IN PART and DENIED IN PART. ASP is ordered to provide responses within five days of this Order.

Dated this 14th day of June, 2024.

Lauren King
United States District Judge

---

[2] Mendy also asks the Court to order ASP to pay for Mendy's motion to compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) "to prevent further unilateral withholding of documents and discovery." Dkt. No. 111 at 4. While the Court does have "great latitude in imposing sanctions" under Federal Rule of Civil Procedure 37, *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985), the Court "must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii); *see also Spearman Corp. Marysville Div. v. Boeing Co.*, No. C20-13-RSM, 2020 WL 5350502, at *1 (W.D. Wash. Sept. 4, 2020). ASP's withholding of documents was based on a good faith and reasonable belief that it was precluded from liability for Mendy's Fair Housing Act claims pursuant to the Agreement. The Court therefore exercises its discretion to deny Mendy's request for sanctions.